UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------

DAVID I GRAZETTE,

                                    Plaintiff,

                    v.

BITCOIN OF AMERICA, LLC, et al.,

                                    Defendants.

--------------------------------------------------------------

**MEMORANDUM & ORDER**
19-CV-4837 (MKB)

MARGO K. BRODIE, United States District Judge:

Plaintiff David I Grazette, proceeding *pro se*, commenced the above-captioned trademark

action on August 22, 2019, against Defendants Dunkin' Realty Investment LLC; Dunkin'

Brands, Inc.; Baskin-Robbins LLC; Dunkin' Donuts USA LLC; and Mister Donut of America

LLC (the "Dunkin' Defendants"), as well as Bitcoin of America, LLC; Blockchain; Bitcoin of

America, LLC; Harvard Business Services; Blockchain Corporation Service Company; DD IP

Holder; DD IP Holder LLC; Alana Sharenow; and Gabrielle S. Roth.  (Compl., Docket Entry

No. 1.)  Plaintiff filed an Amended Complaint on September 9, 2019, naming the Dunkin'

Defendants, DD IP Holder, DD IP Holder LLC, and Roth from his original complaint and adding

other entities, many with an apparent corporate connection to the Dunkin' Defendants.[1]  (Am.

---

[1]  The Amended Complaint names a more extensive list of defendants: Dunkin'; Dunkin'
Donuts; Dunkin' Brands Group, Inc.; Dunkin' Brands Holdings, Inc.; Dunkin' Brands, Inc.;
Dunkin' Donuts LLC; Dunkin' Donuts USA LLC; Dunkin' Donuts USA, Inc.; Dunkin' Donuts
of America, Inc.; Dunkin' Donuts Corporation Massachusetts; Dunkin' Donuts Franchising
LLC; Dunkin' Donuts Franchised Restaurants LLC; Dunkin' Ventures LLC; DD IP Holder LLC
(and, at the same address, IP Holder LLC); DB International Franchising LLC; DB Adfund
Administrator LLC; DB Real Estate Assets I LLC; DB Real Estate Assets II LLC; Third Dunkin'
Donuts Realty LLC; Third Dunkin' Donuts Realty, Inc., Dunkin' Donuts Realty Investment
LLC; Mister Donut of America; Mister Donut Stores, Inc.; Mister Donut of America, Inc.;

Compl., Docket Entry No. 5.)  Plaintiff asserts that the design on a gift card sold by Defendants

"counterfeit[s]" the trademarked logo for his doughnut shop and therefore violates section 32 of

the Lanham Act, 15 U.S.C. § 1114, section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and

section 349 of New York's General Business Law (the "GBL").  (*Id.* at 179.)  Plaintiff also

asserts that "Dunkin'" has "been using a counterfeit mark that lessens the capacity of [Plaintiff's]

federally registered trademark, while profit[ing]on [his] goodwill" without permission.  (*Id.* at 5,

182.)

The Dunkin' Defendants move to dismiss the Amended Complaint.  (Dunkin' Defs.'

Mot. to Dismiss, Docket Entry No. 49; Dunkin' Defs.' Mem. of Law in Supp. of Defs.' Mot.

("Defs.' Mem."), Docket Entry No. 50.)  Plaintiff opposes the motion.  (Pl.'s Mem. of Law

("Pl.'s Mem."), Docket Entry No. 56.)  Plaintiff also moves to amend the caption to add

---

Mister Donut of America LLC; Baskin-Robbins LLC; Baskin-Robbins Inc.; Baskin Robbins Franchising LLC; Baskin-Robbins USA Co., Baskin-Robbins USA LLC; Baskin-Robbins International LLC; BR Japan Holdings LLC; Baskin-Robbins Ice Cream Corporation; Baskin-Robbins Ice Cream Company; Baskin-Robbins Franchise Shops LLC; Baskin-Robbins Flavors LLC; BR IP Holder LLC; Massachusetts Refreshment Corp.; DBI Stores LLC; DBI Texas Stores LLC; DBI Stores Texas LLC; DB Master Finance LLC; DB Master Finance Parent LLC; DB Canadian Supplier Inc.; DB Canadian Holding Company Inc.; DB Franchising Holding Company LLC; DB International Franchising LLC; DB Mexican Franchising LLC; DB UK Franchising LLC; Huntington Ice Cream Co.; SVC Service LLC; SVC Service II Inc.; JKR Global; ARC Worldwide; BBDO New York; BBDO Worldwide; BBDO International Inc.; Leo Burnett Worldwide; and Leo Burnett Company Inc.  (Am. Compl. 7–29.)  Roth is named separately as a defendant.  (*Id.* at 185.)  In addition, Plaintiff includes in the Amended Complaint a longer list of "interested part[ies]," which the Court does not construe as being proposed defendants.  (*Id.* at 30–178.)  The Court construes Plaintiff's Amended Complaint as moving to add new parties to the caption.  Motions to amend a complaint to add new parties are governed by Rule 21 of the Federal Rules of Civil Procedure, and parties should "general[ly] . . . be allowed to amend their pleadings to add new parties unless there is evidence of 'undue delay, bad faith, dilatory tactics, undue prejudice to the party to be served with the proposed pleading, or futility.'"  *Saravia v. Royal Guard Fence Co.*, No. 19-2086, 2020 WL 5231696, at *9 (E.D.N.Y. Sept. 2, 2020) (quoting *Bryant v. Carlisle Carrier Corp.*, No. 13-CV-578, 2014 WL 712592, at *1 (E.D.N.Y. Feb. 25, 2014)).  No such tactics are evident here, and the Court therefore considers all defendants named in the Amended Complaint to be so deemed.

"Dunkin'" as a defendant, (Pl.'s Mot. to Amend Caption, Docket Entry No. 60), and to further amend the Amended Complaint, (Mot. to Amend ("Mot. to Amend"), Docket Entry No. 52; Letter dated Nov. 19, 2019, Docket Entry No. 53). Defendants oppose Plaintiff's motion to amend the Amended Complaint and have not responded to the motion to amend the case caption. (Letter dated Nov. 11, 2019 ("Dunkin' Defs.' Resp. to Pl.'s Letter Requesting Permission to Amend"), Docket Entry No. 54; Letter dated Nov. 22, 2019, Docket Entry No. 55.)[2] For the reasons set forth below, the Court grants the Dunkin' Defendants' motion, denies Plaintiff's motions, and orders Plaintiff to show cause as to why the Court should not dismiss the claims against all other Defendants.

## I. Background

Plaintiff makes and sells doughnuts. (Am. Compl. 180.)[3] Beginning in 2015, Plaintiff began making vegan and old-fashioned cake doughnuts for others in the doughnut industry. (*Id.*) In his free time, he experimented with gluten-free, plant-based recipes. (*Id.*)

In September of 2018, Plaintiff prepared to open his own business, "Do & Doughnut." (*Id.* at 185.) He designed a logo, "Sprinkle Roger," consisting "of a circular face design shaped like a donut consisting of two x[-]shape[d] eyes and a smaller inner circular nose in the middle with sprinkles within the outer circle and cross bones underneath." (*Id.* at 180–81, 184.) The "Sprinkle Roger" mark was designed to "appeal to an edgy, gritty and ethical crowd . . . by signaling" that his product was gluten-free and vegan. (*Id.* at 180–81.) In September of 2018,

---

[2] Plaintiff moves to amend the caption to add Dunkin' as a defendant, (Mot. to Amend Caption), but the Amended Complaint already names Dunkin' as a defendant. The Court therefore denies the motion as moot.

[3] Because Plaintiff's filings are not consecutively paginated, the Court refers to the page numbers assigned by the electronic case filing system.

Plaintiff made business cards and stickers with the logo on them. (*Id.* at 181.) When he noticed those stickers "on computers and cell phones," he "made the investment to protect" his mark by filing it with the patent and trademark office on December 3, 2018. (*Id.* at 181, 184.)

Plaintiff alleges that Dunkin' has been selling doughnuts since at least 1955 and contends that, in 1960, Dunkin'[4] registered a trademark involving the alternate spelling "donut." (*Id.* at 180.) In September of 2018, Dunkin' rebranded, "dropp[ing] the word [donut] from their name." (*Id.*) On May 11, 2019, Dunkin' "advertised a brand new gift card on their . . . [Instagram] page," which "counterfeit[ed]" Plaintiff's trademark.[5] (*Id.* at 181, 186.) On May 13, 2019, the gift card was available at Defendants' store located at 175 Varick Street, New York, New York 10014. (*Id.* at 181, 187, 194.) The caption of Dunkin's Instagram post read "If Your Mom Runs On Dunkin," connecting Defendant's trademark "America Runs on Dunkin" to Plaintiff, who is "literally[] a runner." (*Id.*) The "counterfeit" gift card is being sold at four Dunkin' and Baskin-Robbins locations in New York and may be sold at other locations or through Dunkin's advertising partners Amtrak, the NHL, and JetBlue. (*Id.* at 183, 195–96.) Plaintiff further asserts that the Dunkin' Defendants' sale of the gift card and advertisement on Instagram has damaged the profits of his business. (*Id.* at 6, 199–202.)

On June 20, 2019, the Dunkin' Defendants announced delivery options; on June 24, 2019, they announced plant-based options. (*Id.* at 182, 188.) On July 24, 2019, the Dunkin'

---

[4] The Amended Complaint refers to Dunkin' rather than to a specific corporate entity.

[5] The card depicts the brightly colored letters "XO," with the "O" replaced by a doughnut with sprinkles. (Defs.' Mem. 7.) Plaintiff reproduces a copy of the card in black and white in his own filing and does not dispute the Dunkin' Defendants' illustration of the card, but he does dispute whether the card is meant to be viewed horizontally. (Am. Compl. 183.)

Defendants "started offering gluten-free and plant-based (vegan) options." (*Id.* at 183, 192, 197–98.)

On June 24, 2019, Plaintiff sent a cease and desist letter to Dunkin', but the company refused to stop the use of the mark. (*Id.* at 182.) On July 11, 2019,[6] Defendant Roth, Dunkin' Defendants' attorney, responded to Plaintiff's letter with "a false misrepresentation of fact," (*id.* at 182, 189), stating that "[t]he commercial impression created by [Plaintiff's] mark is clearly that of a face and crossbones," while the Dunkin' Defendants' gift card bears the "representation of an 'XO'" that "will be viewed on its side in a horizontal manner . . . as a term of endearment or love for whomever they are purchasing the gift card," (*id.* at 189–91 (citing letter)). Roth stated in her letter that "Dunkin' is confident that no consumer" would draw an "erroneous[]" link between Plaintiff's donuts and Dunkin' because of the gift card. (*Id.* at 190.)

Plaintiff contends that Roth's representation does not reflect how the card is displayed on Instagram. (*Id.* at 182.) He also contends that Roth did not disclose, and has still not disclosed, that she is "the attorney of record for many of" Dunkin's trademarks, and her failure to disclose gives rise to the tort of "unfair business practices." (*Id.*)

Plaintiff claims that Defendants' conduct violates section 32 of the Lanham Act, 15 U.S.C. § 1114, section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and section 349 of the GBL.[7] (*Id.* at 179.) Plaintiff also cites statutes describing available remedies (15 U.S.C. §§ 1064

---

[6] Although Plaintiff alleges that the letter was sent on June 11, (Am. Compl. 182), the letter is dated July 11 and refers to his June 24 cease and desist letter (*id.* at 189).

[7] Plaintiff also lists 17 U.S.C. §§ 203 and 204 (copyright statutes) and 18 U.S.C. § 2320 (criminalizing trafficking in counterfeit goods). (Am. Compl. 179.) However, Plaintiff has not alleged any copyright allegations and he "cannot bring a private cause of action for alleged criminal violations." *Smith v. N.Y.C. Police Dep't*, No. 06-CV-15436, 2010 WL 423039, at *5 (S.D.N.Y. Feb. 4, 2010); *see also Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver,*

(cancellation of registration), 1116 (injunctive relief),[8] and 1117 (recovery for violation of rights)) and the statutes that establish district courts' jurisdiction over, as relevant here, trademark disputes (15 U.S.C. § 1121 and 28 U.S.C. § 1338). (*Id.*) Plaintiff seeks (1) "the profits of all sales made in connection with the trademarks that have damaged [him] and [his] registered trademark," (2) the cancellation of the America Runs on Dunkin' trademark, (3) the transfer of the DD trademark and the "DD.com" web domain to him, and (4) the transfer of all "MISTER DONUT" trademarks to him. (*Id.* at 6, 199–202.)

## II. Discussion

### a. Standard of review

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must construe the complaint liberally, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018) (quoting *Chambers v. Time Warner Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)); *see also Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015) (quoting *Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997)). A complaint must plead "enough facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S.

---

*N.A.*, 511 U.S. 164, 190 (1994) ("We have been quite reluctant to infer a private right of action from a criminal prohibition alone . . . ." (citing *Cort v. Ash*, 422 U.S. 66, 79–80 (1975))); *Nath v. Select Portfolio Servicing, Inc.*, 732 F. App'x 85, 87 (2d Cir. 2018) ("[N]o private right of action exists under criminal statutes absent an indication that Congress intended to create such a private right of action . . . ." (first citing *Cort*, 422 U.S. at 79–80; and then citing *Alaji Salahuddin v. Alaji*, 232 F.3d 305, 307–08 (2d Cir. 2000))); *Hill v. Didio*, 191 F. App'x 13, 14 (2d Cir. 2006) ("A private individual may bring suit under a federal [criminal] statute only when Congress specifically intended to create a private right of action.").

[8] The Court previously denied Plaintiff's motion for injunctive relief because he failed to demonstrate that he faced irreparable harm. (Orders, Docket Entry Nos. 40, 51.) To the extent Plaintiff renews that motion, the Court denies it in view of the dismissal of the action.

544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009)). Although all allegations contained in the complaint are assumed to be true, this

tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

In reviewing a *pro se* complaint, the court must be mindful that a plaintiff's pleadings

should be held "to less stringent standards than formal pleadings drafted by lawyers." *Erickson*

*v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104–05

(1976)); *see Wiley v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015) (holding that courts must

liberally construe papers submitted by *pro se* litigants "to make the strongest arguments they

suggest"); *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that even after *Twombly*, the

court "remain[s] obligated to construe a *pro se* complaint liberally").

   **b.   The Lanham Act claims**

      **i.   Plaintiff fails to allege a trademark infringement claim**

The Dunkin' Defendants argue that Plaintiff fails to state a claim under sections 1114 and

1125 because he has not plausibly alleged that the two logos have confused or are likely to

confuse consumers. (Defs.' Mem. 9–11.)

In opposing the motion, Plaintiff argues that the Dunkin' Defendants "ha[ve]

appropriated . . . [P]laintiff's fanciful registered trademark to incite market confusion, while[]

profiting from[] a . . . counterfeit[] design." (Pl.'s Mem. 5.) He argues that his mark is strong,

that the Dunkin' Defendants mark is similar, that their products are in competitive proximity,

that the mark is confusing, that the Dunkin' Defendants acted in bad faith in adopting their mark

and are relying on "shields of lawyers" and "creative agencies [who] are avoiding service," and

that his vegan, gluten-free products are superior in quality to the Dunkin' Defendants' doughnuts

but that some of his customers who are "not actively looking" at labels might be confused. (*Id.* at 14–19.)

A plaintiff bringing a trademark infringement and unfair competition claim must demonstrate "both [(1)] a legal, exclusive right to the mark, and [(2)] a likelihood that customers will be confused as to the source of the infringing product." *Really Good Stuff, LLC v. BAP Invs., L.C.*, 813 F. App'x 39, 43 (2d Cir. 2020) (alterations in original) (quoting *Otokoyama Co. v. Wine of Japan Import, Inc.*, 175 F.3d 266, 270 (2d Cir. 1999)); *see also Tiffany & Co. v. Costco Wholesale Corp.*, 971 F.3d 74, 84 (2d Cir. 2020) ("Under the Lanham Act, a plaintiff alleging trademark infringement must demonstrate that (1) 'it has a valid mark that is entitled to protection' and that (2) the defendant's 'actions are likely to cause confusion with [that] mark.'" (alteration in original) (quoting *Sports Auth., Inc. v. Prime Hosp. Corp.*, 89 F.3d 955, 960 (2d Cir. 1996))); *Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 146 (2d Cir. 2003) ("A claim of trademark infringement, whether brought under 15 U.S.C. § 1114(1) (for infringement of a registered mark) or 15 U.S.C. § 1125(a) (for infringement of rights in a mark acquired by use), is analyzed under the familiar two-prong test . . . .").

Section 1114(1) of Title 15 of the United States Code "provides a cause of action against any person who 'use[s] in commerce any . . . imitation of a registered mark . . . likely to cause confusion, or to cause mistake, or to deceive.'" *Fed. Treasury Enter. Sojuzplodoimport v. SPI Spirits Ltd.*, 726 F.3d 62, 71 (2d Cir. 2013) (alteration in original) (quoting 15 U.S.C. § 1114(1)(a)); *see also Kelly-Brown v. Winfrey*, 717 F.3d 295, 304 (2d Cir. 2013) (citing 15 U.S.C. § 1114(1)).

Section 1125(a) "principally provides for two distinct causes of action: false designation of origin or source, known as 'product infringement,' and false description or representation,

known as 'false advertising.'" *Res. Devs., Inc. v. Statue of Liberty-Ellis Island Found., Inc.*, 926 F.2d 134, 139 (2d Cir. 1991); *see also Lexmark Int'l., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 122 (2014) ("Section 1125(a) thus creates two distinct bases of liability: false association, § 1125(a)(1)(A), and false advertising, § 1125(a)(1)(B).").

Section 1125(a)(1)(A) prohibits any person from using in commerce, in connection with any goods, "any word, term, name, symbol, or device, or any combination thereof . . . which . . . is likely to cause confusion, or to cause mistake, or to deceive . . . as to the origin, sponsorship, or approval of his or her goods . . . by another person . . . ." 15 U.S.C. § 1125(a)(1)(A). The "central inquiry" under a section 1125(a) claim is the "likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question." *EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.*, 228 F.3d 56, 61 (2d Cir. 2000) (quoting *Mushroom Makers, Inc. v. R.G. Barry Corp.*, 580 F.2d 44, 47 (2d Cir. 1978)). The test utilizes the same principles and standards as are used for trademark infringement claims. *See id.* at 62; *see also Guthrie Healthcare Sys. v. ContextMedia, Inc.*, 826 F.3d 27, 37 (2d Cir. 2016) (analyzing a trademark infringement claim brought under section 1114); *1-800 Contacts, Inc. v. WhenU.Com, Inc.*, 414 F.3d 400, 406–07 (2d Cir. 2005) (applying the same legal standard to analyze trademark infringement claims under sections 1114 and 1125); *Phoenix Ent. Partners, LLC v. J-V Successors, Inc.*, 305 F. Supp. 3d 540, 546 (S.D.N.Y. 2018) ("The infringement analysis under the trademark infringement and unfair competition provisions of the Lanham Act is the same." (citing *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 114 (2d Cir. 2009))).

"In addressing likelihood of confusion and the appropriate remedy, [courts] generally examine the non-exclusive list of eight factors suggested . . . in [the] landmark opinion in

*Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir. 1961) . . . ." *Guthrie Healthcare Sys.*, 826 F.3d at 37 (footnote omitted). The "Polaroid factors" are:

> [(1)] the strength of the senior user's mark; [(2)] the similarity of the parties' marks; [(3)] the proximity of the parties' areas of commerce; [(4)] the existence of actual consumer confusion; [(5)] the likelihood that the senior user will "bridge the gap" separating their areas of activity; [(6)] whether the junior user acted in bad faith in adopting the mark; [(7)] the quality of the junior user's product; and [(8)] the sophistication of the relevant consumer group.

*Id.* "The pertinence of individual factors varies with the facts of the particular case." *Id.* "[I]t is incumbent upon the district judge to engage in a deliberate review of each factor, and, if a factor is inapplicable to a case, to explain why." *Arrow Fastener Co. v. Stanley Works*, 59 F.3d 384, 400 (2d Cir. 1995) (citing *Thompson Med. Co. v. Pfizer, Inc.*, 753 F.2d 208, 214 (2d Cir. 1985)).

Plaintiff has alleged that his "Sprinkle Roger" mark is a valid mark entitled to protection because it is registered with the Trademark Office; the Dunkin' Defendants do not argue otherwise. Accordingly, the Court focuses on whether Defendants' "XO" mark is likely to cause confusion. Similarly, the Dunkin' Defendants appear to assume that Plaintiff is the senior user of the mark, and the Court assumes the same. Plaintiff includes black-and-white reproductions of both marks[9]:

 

(Am. Compl. 190.)

---

[9] The Dunkin' Defendants also provide a color image of the gift card at issue. (Defs.' Mem. 9.)

### 1. The strength of the senior user's mark

The Dunkin' Defendants argue that Plaintiff's mark is weak because he does not plausibly allege that he uses it to sell any products to consumers. (Defs.' Mem. 12–13 (stating that Plaintiff "has never claimed to have a brick-and-mortar retail shop" and that the web address he first provided is nonfunctional).)

Plaintiff responds that he began selling doughnuts in association with the mark in October of 2018 and that the mark is "stylized and inherently distinctive" because of the "stylized . . . CROSS-BONE" design it contains. (Pl.'s Mem. 14.) Plaintiff describes his mark as "fanciful." (*Id.* at 5.)

Plaintiff's mark, which includes an image of a doughnut, is not fanciful. *See Gruner + Jahr USA Publ'g v. Meredith Corp.*, 991 F.2d 1072, 1076 (2d Cir. 1993) ("A fanciful mark is a name that is made-up to identify the trademark owner's product like EXXON for oil products and KODAK for photography products."). However, Plaintiff's mark does have at least a moderate degree of inherent distinctiveness: rather than simply using an image of a doughnut to sell the product, he has paired the image of a sprinkled doughnut with a symbol derived from the skull and cross bones, and he uses the resulting mark to sell doughnuts made with unusually healthy recipes. *See TCPIP Holding Co. v. Haar Commc'ns Inc.*, 244 F.3d 88, 94 (2d Cir. 2001) (explaining that suggestive marks, which "do not directly describe goods or services or their attributes," enjoy heightened protection); *Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 973 F.2d 1033, 1040 (2d Cir. 1992) (same). Moreover, the Patent Office has registered the mark, suggesting that it is distinctive. *See Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 871 (2d. Cir. 1986) ("[R]egistered trademarks are presumed to be distinctive and should be afforded the utmost protection."); *Abercrombie & Fitch Co. v. Hunting World, Inc.*,

537 F.2d 4, 11 (2d Cir. 1976) ("[T]he decision of the Patent Office to register a mark without requiring proof of secondary meaning affords a rebuttable presumption that the mark is suggestive or arbitrary or fanciful rather than merely descriptive.").

However, even liberally construing Plaintiff's filings as claiming that he has sold doughnuts under this mark since October of 2018 and sold stickers and other products bearing the mark, the mark has a low level of distinctiveness in the marketplace because Plaintiff has not asserted that he has made significant sales using the mark, which has been in commercial use for a short period of time. Plaintiff has not made any assertions about the size of his market. *See Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 269 F.3d 114, 123 (2d Cir. 2001) (holding, in an appeal from the grant of summary judgment, that a "low level of commercial success and small advertising budget relative to market competitors" rendered an inherently distinctive mark weak in the marketplace); *Lopez v. Adidas Am., Inc.*, No. 19-CV-7631, 2020 WL 2539116, at *7 (S.D.N.Y. May 19, 2020) ("To address distinctiveness in the marketplace, a court looks to factors 'such as third-party use of similar marks, duration of use, and sales volume.'" (quoting *Hypnotic Hats, Ltd. v. Wintermantel Enters., LLC*, 335 F. Supp. 3d 566, 583 (S.D.N.Y. 2018))). Taken together, the "Sprinkle Roger" mark's moderate distinctiveness and weak strength in the market weigh slightly in Plaintiff's favor.

## 2. The similarity of the parties' marks

Defendants argue that the marks "are strikingly different" — that Plaintiff's mark, "drawn in cartoonish black and white[,] . . . evokes . . . a skull and crossbones," while the Dunkin' Defendants' graphic "displays the word 'Dunkin'' in prominent white letters against a pink backdrop and is obviously intended to be displayed in a horizontal position." (Defs.' Mem. 13–14.) In that position, an oversized letter "X" combined with the doughnut "O" comes to

"denote 'hugs and kisses' . . . [and] is designed to evoke the love and cheer associated with holidays like Mother's Day and Valentine's Day." (*Id.* at 14.)

Plaintiff argues that the marks are identical because they "share two exact symbols" — a sprinkle doughnut and a cross. (Pl.'s Mem. 14–15.)

"In assessing similarity, courts look to the overall impression created by the [marks] and the context in which they are found and consider the totality of factors that could cause confusion among prospective purchasers." *Gruner*, 991 F.2d at 1078.

This factor strongly favors the Dunkin' Defendants. Plaintiff alleges that his black-and-white mark, which draws design elements from a skull and crossbones, is designed to "appeal to an edgy, gritty and ethical crowd . . . by signaling" that his product is gluten-free and vegan. (Am. Compl. 180–81.) Plaintiff does not allege that the Dunkin' Defendants' colorful mark is intended to be "edgy," and its colorful design, which the Dunkin' Defendants tie to a cheerful evocation of "hugs and kisses," supports the conclusion that it is intended to give a different impression than Plaintiff's mark. *See Paddington Corp. v. Attiki Imps. & Distribs., Inc.*, 996 F.2d 577, 584 (2d Cir. 1993) (explaining that "[t]rade dresses often . . . incorporate descriptive elements, such as an illustration of the sun on a bottle of suntan lotion," and that courts look to "the combination of elements and the total impression that the dress gives to the observer" in assessing distinctiveness); *Flushing Bank v. Green Dot Corp.*, 138 F. Supp. 3d 561, 588 (S.D.N.Y. 2015) (considering the colors and designs of GObank and iGObanking marks on a motion for summary judgment and concluding that they "convey different impressions, have different emphases, sound different and look different").

### 3. The proximity of the parties' areas of commerce

The Dunkin' Defendants argue that Plaintiff does not allege that he is selling any products using his mark, and that even if he was, "Plaintiff markets to gluten free and vegan consumers, and sells only doughnuts — a narrow market that is different from Defendants'." (Defs.' Mem. 14–15.)

Plaintiff argues that the Dunkin' Defendants are in the same market because they have announced a line of vegan products. (Pl.'s Mem. 9–10.)

"The proximity factor can apply to both the subject matter of the commerce in which the two parties engage and the geographic areas in which they operate." *Guthrie Healthcare Sys.*, 826 F.3d at 39; *id.* ("[I]f the patron of a Grand Concourse coffee shop sees a second coffee shop in a nearby neighborhood using what appears to be the same trademark, she is far more likely to believe that the two coffee shops are affiliated than if the second coffee shop is in San Antonio, Texas.").

The parties both sell doughnuts in New York and therefore share the same type of product and area of commerce, weighing in favor of Plaintiff. *See Lang v. Ret. Living Publ'g Co.*, 949 F.2d 576, 582 (2d Cir. 1991) ("To the extent goods . . . serve the same purpose, fall within the same general class, or are used together, the use of similar designations is more likely to cause confusion.").

### 4. The existence of actual consumer confusion

The Dunkin' Defendants argue that Plaintiff "fails to allege facts that plausibly suggest actual confusion." (Defs.' Mem. 15.)

Plaintiff responds that "consumers[] and employees[] can be seen . . . [to be] confused," but does not explain further. (Pl.'s Mem. 17.) In a supplemental filing consisting of two

annotated pictures, Plaintiff indicates that he showed two items (which are unclear but presumably bear the "XO" mark and the "Sprinkle Roger" mark) to store employees, and that at least one called them "the same." (Docket Entry No. 23.)

Because of the short time the marks have been on the market, the lack of actual confusion is a neutral factor. *See Hasbro, Inc. v. Lanard Toys, Ltd.*, 858 F.2d 70, 78 (2d Cir. 1988) (finding that "[t]he magistrate [judge] properly declined to make any negative inference" from a lack of confusion because defendant's product had been on the market a "short time"). Accordingly, Plaintiff's failure to point to confusion between these two new marks does not weigh in favor of either side.

### 5. The likelihood that the senior user will "bridge the gap" separating their areas of activity

The Dunkin' Defendants argue that "this factor is irrelevant" because both marks are used to sell doughnuts, therefore the marks "are already in competitive proximity." (Defs.' Mem. 15.) Plaintiff agrees. (Pl.'s Mem. 16.)

The parties are correct. Where "products are already in competitive proximity, there is really no gap to bridge, and this factor is irrelevant to the *Polaroid* analysis in this case." *Star Indus., Inc. v. Bacardi & Co.*, 412 F.3d 373, 387 (2d Cir. 2005).

### 6. Whether the junior user acted in bad faith in adopting the mark

The Dunkin' Defendants argue that Plaintiff does not allege any facts suggesting they acted in bad faith in adopting their mark because (1) he fails "to plausibly allege that he has earned good will with consumers by using the Sprinkle Roger [m]ark in connection with any goods and services" and, (2) even if he has earned goodwill, "he fails to allege how Dunkin' knew of or intended to capitalize on that good will." (Defs.' Mem. 15.)

Plaintiff argues that the Dunkin' Defendants' litigation, paired with their use of creative

agencies to generate ideas for the logo, amount to "smoke and mirrors" tactics suggestive of bad

faith. (Pl.'s Mem. 17, 19.)

Accepting as true Plaintiff's assumption that the Dunkin' Defendants knew of the mark, it

is implausible that the Dunkin' Defendants, a longstanding national brand,[10] had any "intention

of capitalizing on [P]laintiff's reputation and goodwill and any confusion between his and the

[Dunkin' Defendants'] product," when Plaintiff markets and sells his products to a niche market.

*Lang*, 949 F.2d at 583; *see also Star Indus., Inc.*, 412 F.3d at 389 (noting the "implausibility of

the notion that a premier international rum manufacturer would seek to conflate its products with

those of a regional discount vodka manufacturer").

### 7. The quality of the junior user's product

Defendants argue that Plaintiff does not address this factor in the Amended Complaint

and that Plaintiff's failure to draw a distinction between the quality of their respective products

works in Defendants' favor. (Defs.' Mem. 16.)

In opposition to the motion, Plaintiff argues that the Dunkin' Defendants' product is of

inferior quality because they do not currently offer gluten-free or vegan doughnuts and some

consumers specifically seek out food with those attributes. (Pl.'s Mem. 18.)

"This factor is primarily concerned with whether the senior user's reputation could be

---

[10] The Court takes judicial notice of the fact that Dunkin' is a large chain that serves doughnuts, among other items. *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998) (noting that courts may take judicial notice of facts "generally known within the territorial jurisdiction of the trial court" (quoting Fed. R. Evid. 201(b)(1))). "As of December 26, 2015, there were 11,750 Dunkin' Donuts points of distribution, of which 8,431 were in the U.S. and 3,319 were international . . . ." Dunkin' Brands Grp., Inc., Annual Report (Form 10-K) (Feb. 18, 2016); *see also Wilson v. Ltd. Brands, Inc.*, No. 08-CV-3431, 2009 WL 1069165, at *3 n.3 (S.D.N.Y. Apr. 17, 2009) (finding that an attachment to form 10-K is a public record of which judicial notice is appropriate). Plaintiff alleges that Dunkin' has been selling doughnuts since at least 1955. (Am. Compl. 180.)

jeopardized by virtue of the fact that the junior user's product is of inferior quality." *Arrow Fastener Co.*, 59 F.3d at 398. (citing *Lois Sportswear, U.S.A., Inc.*, 799 F.2d at 875). Assuming, as Plaintiff does, that consumers consider vegan, gluten-free doughnuts to be entirely different products than those sold by the Dunkin' Defendants, this factor does not favor either party.

### 8.    The sophistication of the relevant consumer group

Defendants argue that Plaintiff did not allege anything about the target market's sophistication and that this factor therefore favors them because Plaintiff did not allege that his market is unusually *unsophisticated* and liable to be confused. (Defs.' Mem. 16.) Defendants also argue that Plaintiff's "allegations suggest that his buyers . . . are sophisticated, since they likely have dietary restrictions around gluten and animal products."

Plaintiff argues that not all of his potential customers have dietary restrictions or will be so discerning. (Pl.'s Mem. 18–19.)

Because the products at issue are inexpensive, this factor slightly favors Plaintiff. *See Lever Bros. Co. v. Am. Bakeries Co.*, 693 F.2d 251, 259 (2d Cir. 1982) ("The ordinary purchaser of bread and margarine is a casual buyer, and the bustling, self-service atmosphere of a typical supermarket makes careful examination of products unlikely . . . ."); *cf. Arrow Fastener Co.*, 59 F.3d at 399 (finding that "[a] consumer [of pneumatic staplers] who . . . possess[ed] [a] high level of knowledge, and who [was] also paying a substantial amount of money for the product, [was] not likely to be confused by" a common term in the model number).

In sum, on balance, the factors do not point to consumer confusion. "The 'evaluation of the Polaroid factors is not a mechanical process where the party with the greatest number of factors weighing in its favor wins. Rather, a court should focus on the ultimate question of whether consumers are likely to be confused.'" *Le Book Publ'g, Inc. v. Black Book*

*Photography, Inc.*, 418 F. Supp. 2d 305, 311 (S.D.N.Y. 2005) (quoting *Paddington Corp.*, 996 F.2d at 584). Both marks are associated with doughnut companies and include a sprinkle doughnut and crossed lines in the design, but the similarities end there. A comparison of the "Sprinkle Roger" mark and the "XO" mark (paired with Dunkin's logo) reveals that they give starkly different impressions. *See Merriam-Webster, Inc. v. Random House, Inc.*, 35 F.3d 65, 72 (2d Cir. 1994) ("We find that the impressions conveyed by the combinations of angular and curving logos, and by quite different names and some different colors (bright blue is used for the title on the Merriam–Webster work), preclude a finding of similarity."); *O'Keefe v. Ogilvy & Mather Worldwide, Inc.*, 590 F. Supp. 2d 500, 521–22 (S.D.N.Y. 2008) (holding American Express slogan "My Life. My Card.," paired with that company's well-known logo, was not confusingly similar to the slogan "My Card. My Work." presented in a different context). The other factors are neutral or weakly favor Plaintiff. Plaintiff's mark, though distinctive in form, has a limited presence in the market, and although they are in the same area of commerce, Plaintiff alleges very little about how consumers actually respond to the marks, other than noting that he saw stickers with his "Sprinkle Roger" logo in public. Nor do Plaintiff's allegations suggest bad faith. In addition, while the low price of the product at issue suggests consumers will be less sophisticated, slightly favoring Plaintiff, the alleged quality of the products favors neither party. Accordingly, based primarily on the different impressions produced by the marks, the Court finds that Plaintiff has not stated an infringement claim and dismisses these claims.

### ii. Plaintiff fails to state a counterfeiting claim

The Dunkin' Defendants argue that Plaintiff's assertion that they are "[t]rafficking in counterfeit goods or services" is baseless because the gift card graphic is not "identical with, or substantially indistinguishable from, [Plaintiff's] registered mark." (Defs.' Mem. 8 (first quoting

Am. Compl. 179; and then quoting 15 U.S.C. § 1127).)

Plaintiff argues that the "XO" mark is a "confusingly similar, counterfeit design." (Pl.'s Mem. 4.) He asserts that creative agencies who work with the Dunkin' Defendants, including BBDO and Leo Burnett, stole his work because "[i]t's . . . their jobs to know what is going on in the market," and Plaintiff's "Sprinkle Roger" mark was publicly released before the Dunkin' Defendants released their "XO" mark. (*Id.* at 11.)

"The Lanham Act defines as counterfeit 'a spurious mark which is identical with, or substantially indistinguishable from, a registered mark.'" *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 472 F. App'x 19, 22 (2d Cir. 2012) (quoting 15 U.S.C. § 1127); *see also Kelly-Brown*, 717 F.3d at 314–15 (finding mark not counterfeit where "consumers . . . would recognize the differences . . . from a cursory visual inspection" based on different "font, color, and capitalization"); *TechnoMarine SA v. Jacob Time, Inc.*, 905 F. Supp. 2d 482, 489 (S.D.N.Y. 2012) (dismissing counterfeiting claim where the defendants were not "trying to [dupe] or actually duping customers into the false belief they were purchasing the 'real thing'" through ploys such as "falsified logos, inferior workmanship and materials, and combinations of colors and markings not found in a non-counterfeit product").

As the Dunkin' Defendants argue, Plaintiff does not explain how a customer might mistake the Dunkin' Defendants' colorful mark, paired with the Dunkin' logo, for his own black-and-white "Sprinkle Roger" mark. Instead, Plaintiff's counterfeiting argument — that the value of his brand is reduced by Defendants' "confusingly similar" mark — is a trademark infringement argument rather than a counterfeiting argument, and, as discussed above, Plaintiff fails to state an infringement claim. In addition, as to Plaintiff's claim against Defendants' creative agencies that he alleges appropriated his work, also for the reasons explained above,

Plaintiff cannot state a claim against them. Accordingly, the Court dismisses Plaintiff's counterfeiting claim.

### c. The section 349 claim against the Dunkin' Defendants

The Dunkin' Defendants argue that because the same pleading standards apply to Plaintiff's claim under section 349 of the GBL, it fails for the same reasons that his Lanham Act claims do. (Defs.' Mem. 16–17.)

Plaintiff argues that the Dunkin' Defendants conduct is more egregious than that in *North American Olive Oil Ass'n v. Kangadis Food Inc.*, 962 F. Supp. 2d 514, 516–17 (S.D.N.Y. 2013), in which a court entered an injunction barring the defendant from, among other things, marketing some of its products as "100% Pure Olive Oil." (Pl.'s Mem. 10.)[11]

"The pleading standards under the Lanham Act and section 349 of the New York General Business Law are 'substantially the same.'" *Gottlieb Dev. LLC v. Paramount Pictures Corp.*, 590 F. Supp. 2d 625, 636 (S.D.N.Y. 2008) (quoting *Avon Prods. v. S.C. Johnson & Son, Inc.*, 984 F. Supp. 768, 800 (S.D.N.Y.1997)); *see also Danone, US, LLC v. Chobani, LLC*, 362 F. Supp. 3d 109, 123 (S.D.N.Y. 2019) ("The standards for bringing claims under . . . the Lanham Act and [section] 349 . . . are substantially the same.") (collecting cases).

As argued by the Dunkin' Defendants, Plaintiff's section 349 claim fails for the reasons that his Lanham Act claim fails. Plaintiff does not argue that the Dunkin' Defendants are falsely

---

[11] Plaintiff also argues that Dunkin' has vigorously defended another of its marks, "America Runs on Dunkin'," by sending a cease and desist letter to Mike's Coffee when the company used the slogan "North now runs on Mike's." Accordingly, Plaintiff argues, the Dunkin' Defendants' "translat[ion of] trademark infringement" should affect how the Court addresses his claims. (Pl.'s Mem. 7–8.) The Court construes Plaintiff's argument as asserting that Dunkin' takes a broad view of which trademarks are infringing when its own marks are senior and potentially being infringed upon but takes an inconsistently narrow view of trademark law when its own marks are the junior, infringing ones. The Dunkin' Defendants' approach to defending another of their marks is irrelevant to the strength of Plaintiff's claims.

marketing their products as vegan, and therefore he is not arguing that the Dunkin' Defendants' marketing is likely to deceive or confuse customers about the content of the products that they sell. *N. Am. Olive Oil Ass'n*, 962 F. Supp. 2d at 521. The Court therefore dismisses this claim.

### d. Unfair business practices claim against Roth

Finally, Plaintiff alleges that Roth committed the state-law tort of "unfair business practices" by not disclosing her relationship with the Dunkin' Defendants in responding to his cease and desist letter. The legal basis for this claim is unclear.

In view of the Court's dismissal of Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over this remaining state law claim. *See* 28 U.S.C. § 1367(c)(3) ("District courts may decline to exercise supplemental jurisdiction over a claim if the district court has dismissed all claims over which it has original jurisdiction."). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims." *Pension Benefit Guar. Corp. ex rel. Saint Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 727 (2d Cir. 2013) (quoting *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003)); *see also One Commc'ns Corp. v. JP Morgan SBIC LLC*, 381 F. App'x 75, 82 (2d Cir. 2010) ("If all of a plaintiff's federal claims are dismissed, a district court is well within its discretion to decline to assert supplemental jurisdiction over any state law claims . . . ."). The Court dismisses Plaintiff's unfair business practices claim without prejudice.

### e. Amendment would be futile

The Dunkin' Defendants argue that Plaintiff should not have a further opportunity to amend his Complaint because he has already amended it once and because his "claims are so

infirm that no facts could support them." (Defs.' Mem. 17.)

Plaintiff moves to further amend his Complaint. (Mot. to Amend.)

"A *pro se* complaint 'should not be dismissed without the [c]ourt's granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (alterations omitted) (quoting *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010)). While "court[s] should freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), "[l]eave to amend may properly be denied if the amendment would be 'futile,'" *Grullon*, 720 F.3d at 140 (alteration omitted) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies . . . ." *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 224–25 (2d Cir. 2017) (citing *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012)).

Plaintiff has already amended the Complaint once and any further amendment would be futile because Plaintiff's allegations establish that he cannot state a trademark infringement or counterfeiting claim. The principal defect in Plaintiff's claim lies in the comparison of the two marks, which give strikingly different overall impressions. *Gruner*, 991 F.2d at 1078. In addition, although Plaintiff names additional defendants, his allegations are only against Dunkin' and only concern that mark. Accordingly, "[t]he problem with [Plaintiff's] causes of action is substantive; better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

### III. Conclusion

For the foregoing reasons, the Court grants the Dunkin' Defendants' motion and dismisses Plaintiff's Lanham Act and section 349 claims against them with prejudice, and

dismisses his unfair business practices claim against Roth without prejudice. The Court also denies Plaintiff's motions. Because of the ruling, the Court orders Plaintiff to show cause why it should not dismiss the claims against all other Defendants.

Dated:  September 30, 2020
        Brooklyn, New York

                              SO ORDERED:


                              _____s/ MKB_____
                              MARGO K. BRODIE
                              United States District Judge